The Connecticut and Passumpsic Rivers Railroad Company v. Barnard A. Newell.

*Practice.   Assumpsit.   Railway bonds.*

After a cause had been entered upon the docket of the county court, the plaintiff's attorney, during vacation, wrote to the defendant's attorney that he should discontinue it at the next term, at the call of the docket. At that term the defendant's attorney taxed the defendant's costs, and showed it to the plaintiff's attorney who assented to its correctness. The defendant's attorney then directed the clerk to enter the suit as discontinued which was done. Later in the term the plaintiff's attorney in the absence of the defend-

The Conn. and Pass. Rivers Railroad Company *v.* Newell.

ant's attorney, moved that the discontinuance be stricken off and the cause continued, which was done by order of the court. At the next term the defendant moved to dismiss the cause by reason of the foregoing facts, but the county court overruled the motion. *Held,* that the cause was not so discontinued as to put it beyond the *discretion of the county court to reinstate it upon the docket;* and that the exercise of this discretion could not be revised in the supreme court.

The plaintiffs, who were liable upon a negotiable promissory note to the defendant, not yet due, delivered to the latter in payment thereof some negotiable railroad bonds, but by inadvertence the note was not surrendered to the plaintiffs. Afterwards and before its maturity, the defendant sold the note to a *bona fide* holder, who commenced suit thereon against the plaintiffs, and recovered and collected a judgment against them for the amount of the note. The plaintiffs, after such action on the note had been commenced against them, but before judgment had been rendered therein, brought an action of assumpsit for money paid, and money had and received, against the defendant. *Held,* that they were entitled to recover upon the ground that the bonds were received and were to be regarded the same as money; that they were paid with the implied understanding that they were to be applied on the note, and that as the defendant, by the sale of the note, in such a way as to leave the plaintiffs still liable upon it, had violated this implied agreement, he therefore held the bonds *ex aequo and bono,* and in fraud of the plaintiffs.

Assumpsit for money paid and money had and received. The writ was served on the 10th of October, 1855, and was returnable at the December Term, 1855, of the Caledonia County Court, and was continued at that term. Prior to the next term held in June, 1856, the plaintiffs' attorney sent a written notice to the defendant's attorney to the effect that the suit was discontinued, and that he should so enter it at the call of the docket. At the June Term, 1856, the defendant's attorney made a taxation of defendant's costs and showed it to the plaintiffs' attorney, who assented to its correctness. The defendant's attorney then went to the clerk of the court, who by the former's direction entered the case upon the docket as discontinued, and the taxation was left with the clerk. The defendant's attorney then left the court and was not present again during the term. Subsequently during the term, the plaintiffs' attorney moved the court for leave to strike off the entry of discontinuance and to have the cause continued for trial, which the court decided to do, and made an order accordingly, and directed the plaintiffs' attorney to notify the defendant's attorney of this disposition of the case. Soon after

the term, such a notice was sent by letter to the defendant's attorney, but it did not appear that this notice was ever received.

At the next succeeding term, held in December, 1856, the defendant's counsel appeared and moved that the cause be stricken from the docket, for the reason of the facts above stated, but the court,—POLAND, J., presiding,—overruled the motion, to which the defendant excepted. The cause was continued from term to term until the June Term, 1858, when it was tried upon the general issue, by jury,—POLAND, J., presiding.

The plaintiffs gave evidence tending to prove the following facts ; That in June, 1849, the plaintiffs, for the purpose of extending their railroad from Wells River northward, located their road over a piece of land in Newbury, owned jointly by the defendant and one D. N. Carpenter, of Greenfield, Mass. ; that Erastus Fairbanks, the president of the plaintiffs' company, and the defendant Newell agreed upon the sum of one thousand dollars as the sum to be paid by the plaintiffs for this land; that thereupon Mr. Fairbanks, as president of the company and on their behalf, executed to the defendant Newell, or bearer, a note for the sum of one thousand dollars, payable on or before the first day of January, A. D., 1855, with interest annually after the first of January, then next, and delivered the note to the defendant ; that subsequently the plaintiffs found it necessary for the use of their road to have three other parcels of land belonging to Newell and Carpenter in Newbury, and that on the 23d of January, 1850, Mr. Fairbanks met the defendant Newell and Carpenter at Wells River and contracted with them for these lands, for the price of six hundred dollars to be paid in the negotiable bonds of the plaintiffs, and at the same time gave to them an order on the plaintiffs' treasurer to deliver to them bonds to the amount of sixteen hundred dollars in payment of these last purchased lands, and also to pay the note given for the land first purchased ; that Newell and Carpenter presented this order and received from the treasurer the amount of sixteen hundred dollars in bonds for the purpose aforesaid ; that by some inadvertence the note was not given up to Mr. Fairbanks at the time the order was given, but was kept by the defendant and retained by him till about a year before it fell due, and before the commencement of this suit,

when he sold and transferred it for a good consideration, to one Davis, of Massachusetts, who had no notice that the same had been paid ; that when the note fell due Davis demanded payment of it of the plaintiffs, and payment being refused, he commenced an action thereon in the superior court in the city of Boston; that the plaintiffs defended this suit, but Davis, at the March Term, 1856, of that court, recovered a verdict against the plaintiffs for the full amount of the note ; that judgment was rendered on this verdict in June, 1856, and the amount collected of the plaintiffs.

The defendant gave evidence tending to prove that the lands last purchased by the plaintiffs, of Newell and Carpenter, were purchased at the price of sixteen hundred dollars, and not for six hundred dollars, and that the bonds were delivered and accepted to pay for the same and not to pay the note.

The defendant's evidence also tended to prove, that sometime after receiving these bonds, Newell and Carpenter made a division of the proceeds of their lands, and that Newell received the note towards his share, and that Carpenter took the railroad bonds ; that he had received payment upon some of them and had exchanged the others for other bonds of the plaintiffs.

The defendant's counsel claimed and requested the court to charge the jury, that if the jury found all the facts which the plaintiffs' evidence tended to prove, the plaintiffs could not recover.

1st. Because this suit was commenced before final judgment had been obtained by Davis on the note against the plaintiffs, and before the same had been paid by the plaintiffs.

2d. That the plaintiffs could not recover under the money counts, because the note was paid in railroad bonds and not in money.

But the court declined so to charge the jury, but did charge them, among other things not excepted to, that if they found that the bonds were delivered and received in payment of the note, and that the defendant sold and transferred the note to Davis before it was due, and before the commencement of this suit, so that Davis was legally entitled to recover the amount of it of the plaintiffs, and that they had been compelled to pay it, the plain-
would be entitled to recover in this action,

To this charge, and the refusal of the court to charge as requested, the defendant excepted.

The jury rendered a verdict for the plaintiffs.

*Geo. C. & Geo. W. Cahoon* and *P. Dillingham*, for the defendant.

1. The suit was in fact discontinued at the June Term, 1856, and by that means the defendant was thenceforth discharged from the suit and the court had no farther jurisdiction over him, except by his own consent. The order of the county court, striking off the discontinuance, was not the exercise of a discretion conferred by law, but was beyond their authority, and may be revised in this court. The defendant waived no right by appearing and moving a dismissal of the suit. *Hill* v. *Dunlap*, 15 Vt. 645 ; *Downer* v. *Garland*, 21 Vt. 362 ; *Ballou* v. *Ballou*, 26 Vt. 675 ; *Kinney* v. *Hill*, 11 Vt. 233.

2. As to the count for *money paid*, the action was premature, because the payment to Davis upon his judgment was subsequent to the commencement of this suit.

3. Neither can the count for *money had and received* be sustained, because the defendant did not receive *money* of the plaintiffs, but merely bonds. And even if bonds are to be regarded as money, still they were paid under such circumstances that their value can not be recovered back in this form of action. They were not paid upon a consideration that failed, but in the discharge of a duty, the payment of a debt. *Chellis* v. *Wood*, 11 Vt. 466 ; *Burke* v. *Jewell*, 14 Vt. 470 ; *Atkins* v. *Owen*, 6 N. & H. 309.

4. Even if the plaintiffs could rightfully recover the money received by the defendant upon the sale of the note to Davis, if any was received, still the plaintiffs were not entitled to recover, because there was no testimony tending to show that he received any money of Davis, or what he received or how much.

In this action the plaintiff can only recover the amount of money the defendant has *received*, not what the plaintiff has *lost*. *Moses* v. *Macfarlane*, 2 Burr. 1012 ; *Stearns* v. *Dillingham*, 22 Vt. 624.

*Slade & Edwards*, for the plaintiffs.

1. The case could not strictly be regarded as discontinued until

an entry to that effect was made on the docket by order of the plaintiff's counsel, which was never done. The defendant's counsel had no authority to give such an order, except what might have been implied from the letter of the plaintiffs' attorney to him. Before the court adjourned the plaintiffs' attorney concluded not to fulfill his arrangement in regard to the discontinuance of the suit, and applied to the court to have the entry thus made upon the docket stricken off.

The decision of the county court upon this motion was purely a matter of discretion with them, and is not subject to revision by this court. The county court have control of their dockets, and the proper entries to be made upon them. *Mosseaux* v. *Brigham*, 19 Vt. 457; 1 Wash. Dig. 385-6; 2 Wash. Dig. 314-5-6.

2. The plaintiffs' having paid the note while in the hands of the defendant, it became their property, and they could well maintain trover for the same against the defendant. *Buck* v. *Kent*, 3 Vt. 99; *Tilden* v. *Brown*, 14 Vt. 164; *Kingman* v. *Peirce*, 17 Mass. 247; *Peirce* v. *Gilson*, 9 Vt. 216; *Fullam* v. *Cummings*, 16 Vt. 697.

Therefore if trover will lie for the conversion of the note, the defendant having in this case sold it, the plaintiffs may waive the tort and bring assumpsit for the money. N. Chipman 95; Chitty on Cont. 22 to 33 and notes; *Chauncey* v. *Yeaton*, 1 N. H. 151; *Hill* v. *Davis*, 3 N. H. 384; *Oughton* v. *West*, 3 Starkie 321; *Hill* v. *Prescott*, 3 Taunt. 274; *Young* v. *Marshall*, 8 Bing. 43.

3. The action for money had and received is in the nature of a bill in equity, and is to recover money belonging to the plaintiff in the hands of the defendant, which in equity and good conscience he can not retain. The defendant having treated the note as not paid by selling and transfering it, he can not now repudiate that position; and the plaintiffs having been obliged by law to pay the note in the hands of an innocent holder, may well treat the money, or bonds, paid upon the note to the defendant, as money of theirs in his hands without consideration, and recover it back in this form of action.

4. It is no objection to this form of action that the payment made by the plaintiffs to the defendant was in negotiable bonds

25

and not specifically in money. The bonds were received and treated as money, and proof of anything given and received as cash, whether it be land or personal chattels, is sufficient to support this action. *Barclay* v. *Gouch*, 2 Esp. 571 ; 2 Greenl. Ev. secs. 113, 118 ; *Ainslee* v. *Wilson*, 7 Cowen 662 ; *Rew* v. *Barber*, 3 Cowen 272.

REDFIELD, Ch. J. The court have had no difficulty in regard to the first question. There was not such a discontinuance of the action that it was not competent for the court to reinstate it upon the docket. Until the actual discontinuance of the action in court, it was under the control of the court. It was in their discretion to restore it, and the exercise of such discretion is not subject to revision in this court, upon exceptions. It has been held that when the process is defective, and has never been entered in court, it may be so far discontinued by notice in writing, that if a new suit be instituted, it will not be regarded as vexatious. *Wright* v. *Doolittle*, 5 Vt. 390. And oral notice · of discontinuance will be sufficient, in such cases, to enable the plaintiff to bring new suit but may subject him to the costs of the first suit until the entry of discontinuance in court. *Hill* v. *Dunlap*, 15 Vt. 645.

But it has been held that after the suit is entered in court the plaintiff can not discontinue it, out of court, without the consent of the other party. *Jenny* v. *Glynn*, 12 Vt. 480. At all events it is under the control of the court until the actual entry of discontinuance by direction of the plaintiff, which does not seem to have occurred in the present case.

II. The case upon the merits is one of more difficulty. There does not seem to be much question, that upon the facts proved upon the trial, the plaintiffs should recover in some form of action, and in this action indeed, unless the suit is premature. But the recovery in the county court went upon the ground that the plaintiff was entitled to recover back what he paid the defendant upon the note, as money had and received for his use, after the defendant negotiated the note, it being still current. And unless this view of the case can be mantained, a new trial must be granted,

since no other questions, which arise in the case, and which might constitute the basis of recovery in this or some subsequent action, have been properly submitted to the jury.

We do not know what or how much the defendant received upon the transfer of the note to Davis, but only that the note was transferred upon " good consideration." If the recovery might have been put upon the ground that this was done by the defendant in his own wrong, which the plaintiffs might therefore claim the benefit of, by waiving the tort, and treating the defendant as their agent, he would at all events be entitled to have the questions of fact arising in this view of the case, submitted to the jury.

And in regard to the money paid upon the judgment in favor of Davis, if there is no other insuperable obstacle, the fact that the payment was made since this action was instituted will preclude a recovery upon that ground alone.

But it seems to us that the case was put in the county court, upon its most obvious and equitable grounds, and grounds which are maintainable upon the strictest legal reasons. This note, at the time being still current, was not liable to be extinguished by the mere fact of payment, as contracts not negotiable or those which are negotiable, but over due, may be. The payment of this note to the payee did not operate to extinguish the contract, until its literal application. This contract possessed a distinto quality by which it was susceptible of being kept on foot and made binding upon the plaintiffs, notwithstanding the handing over of the amount due upon it to the payee, as payment until the literal application of the payment upon the contract itself. This quality of the contract was well understood by the parties to it, and there was therefore an implied understanding between the parties that the money received in payment should be actually applied upon the note, before the defendant parted with it. And whenever the defendant violated this implied understanding, and put it out of the power either of himself or the plaintiff to make the payment effectual, he thereby forfeited his right longer to retain the money. By putting the note in circulation he was guilty of a fraud upon the plaintiffs, by which he became a mere wrong doer in the holding of the money paid over to apply upon the note, which he impliedly bound himself to apply, and

which he had put it out of his power to do. He thereafter held the money in his own wrong, and consequently to the use of the plaintiffs, and they may recover it in this form of action.

The only ground upon which the party making a payment is ever precluded from recovering it back is that the contract upon which the payment was made was thereby extinguished, and might and should have been defended when sued. And after suit and judgment upon it, to allow a recovery for money paid upon it, is virtually to allow a recovery back of the money for which the judgment was rendered, and thus collaterally to waive the judgment in another action. This is the very ground upon which the cases in this State, in regard to this question, have proceeded. *Strong* v. *McConnell*, 10 Vt. 231 ; *Corey* v. *Gale*, 13 Vt. 639.

But it is obvious that none of these reasons apply to the present case. No defence could have been made in the action upon the note. And this recovery is not in any sense attacking the judgment upon the note. It is merely recovering the money in the hands of the defendant, which he has failed to apply according to the implied duty upon which he received it. It is not in principle different from the misapplication of money received upon any other confidence or trust. And in all such cases the wrong doer always becomes liable to refund the money, and in this form of action.

This case is not different in principle from that where the payee receives payment upon a negotiable instrument which he had already negotiated, or upon the faith of his having become the holder of an outstanding contract which he did not in fact hold. In such cases there could be no question whatever, that the money would be wrongfully received, and might therefore be recovered back as money had and received to the use of the party paying it.

And the principle of the case becomes precisely the same here, after the defendant negotiated the note. To the interests of the plaintiffs, and in reason and justice, it can make no difference, whether the party never had the power to apply the payment, according to the implied duty upon the faith of which it was made, or has voluntarily put it out of his power to do so, after receiving the money. The present *status* of the party is precisely the same, both in equity and in law, as that of one who receives money

under the false pretence that he can and will apply it upon a negotiable instrument which he never owned or possessed, upon one which he had already parted with.

In the case of *Strong* v. *McConnell, supra,* it was decided that if any future application of the payment was contemplated at the time it was made, before it should operate to extinguish the contract, it might be recovered back, if this failed to be made, and the contract itself was subsequently collected.

Something was said in argument upon the question whether the railroad bonds received by the defendant can be treated as money. Promissory notes, bills of exchange and bank bills, when received as money, have long been allowed to form the basis of recovery upon the common money counts. The books are full of cases to this effect. And railway bonds and coupons are now held to be negotiable, the same as bank bills, and are by all treated as money. We think therefore the recovery may well be had under the count for money had and received.

Judgment affirmed.