### GAMSBY v. RAY.

The pendency of two suits, for one cause at one time, brought by one plaintiff against one defendant, is a cause of abating the second suit without inquiry into the fact of actual vexatiousness and oppression, and notwithstanding the plaintiff, before commencing the second, gave the defendant a written notice that he discontinued the first.

ASSUMPSIT, by Julia A. Gamsby against Orman P. Ray.   The plaintiff commenced a suit against the defendant by writ dated July 25, 1872, which writ was duly served upon the defendant by attaching property and leaving a summons.   On August 5, 1872, the following notice, in writing, was served upon the defendant, to wit,—"To Orman P. Ray : You are hereby notified that the suit against you by Julia A. Gamsby,

commenced by writ dated July 25, 1872, is hereby discontinued, and you need not appear at the return day thereof. JULIA A. GAMSBY,

"August 5, 1872. By her attorney, J. H. DUDLEY."

Upon the back of this notice was the following return : " Coös, ss. August 5, 1872. I notified the within named Orman P. Ray, by leaving at his usual place of abode a copy of the within notice, with my name and office indorsed by me thereon.

" Fees, &c. IRA QUIMBY, Deputy Sheriff."

After the service of this notice upon the defendant, the same plaintiff commenced a new suit upon the same cause of action and against the same defendant, the writs being substantially alike, except in their date. To this second writ the defendant pleaded in abatement that there was another action pending between the same parties and for the same cause of action when this last suit was brought. And the question was upon the foregoing facts, whether this plea in abatement must be sustained or overruled. No objection was made to the form of the plea. Reserved.

*Dudley*, for the plaintiff.

The defendant, *pro se.*

DOE, J. Would the two suits have been pending at the same time if the plaintiff had not notified the defendant, before commencing the second suit, that the first was discontinued ? This question was considered, and a strong opinion in the affirmative was expressed, though the point was left undecided in *Bennett* v. *Chase*, 21 N. H. 570, 581, 584. Pleas of this kind are sustained as a method of enforcing the principle of law that a man shall not, at one time, be harassed and oppressed by several suits brought against him by the same plaintiff on the same cause of action ; and this principle applies as well before as after the suits are entered in court. In *Bennett* v. *Chase*, it is shown to be unnecessary in our practice to allege in the plea that the pendency of the former action appears of record. And we are satisfied, upon the reasoning in that case, to adopt the opinion there expressed, and to hold that the first action was pending, although not entered, when the second was commenced, unless the notice of discontinuance operated as such a termination of the first that it was no longer pending within the meaning of the law applicable to this subject.

Did the notice cause the first action to cease to be pending, in such a sense as to defeat a plea in abatement ? By agreement of parties, a suit may, for some purpose, be settled, discontinued, and terminated before entry. *Carlton* v. *Choate*, 6. N. H. 138 ; *Frazier* v. *Merrill*, 31 N. H. 496. And where the service of the writ is defeated by the defendant, the same end may be accomplished. *Chadbourn* v. *L. Bank*, 24 N. H. 333. But the plaintiff cannot terminate a suit by notice to the defendant before entry, so as to prevent the defendant recovering costs on a complaint for not entering the action. *Deming* v. *Goodall*, 18 N. H. 251 (the rule being now altered by statute as to trustees—Gen. Stats., ch. 230, sec. 18). In *Parker* v. *Colcord*, 2 N. H. 36, to a plea in abatement

of the pendency of a former suit, the plaintiff replied that, before the commencement of the second suit, the parties agreed to a discontinuance of the first, which, in pursuance of the agreement, and before the entry and pleadings in the second, was discontinued and dismissed. On demurrer, the replication was held bad, on the ground that the agreement to discontinue was executory, and that the first suit was pending until discontinued on the record. The first suit had been entered, and the agreement was made in vacation. If the doctrine of that case is sound, and if it is applicable to the present case, the defendant is entitled to judgment, for a mere notice of discontinuance, given by the plaintiff to the defendant, cannot have a greater effect than an agreement of the parties to a discontinuance. If, in *Parker* v. *Colcord*, the agreement was, not that the suit was terminated at the time of the agreement, but that it should be terminated at the next term, the suit might, perhaps, for some purposes, be regarded as pending until the time when the agreement was executed. But if the parties understood that the suit was terminated at. the time their agreement was made, there might be a question whether the agreement was not executed when it was made, and whether the suit would be pending afterwards so as to prevent the bringing of another suit ; and on that question we express no opinion. There might be a doubt whether such a case would come within the principle which protects a defendant against the vexation of two suits at one time, on one cause of action.

But however that may be, we see no reason for holding that a plaintiff may, before entry, discontinue his suit, without the consent of the defendant, and thus avoid a plea of a former action pending. The defendant might be oppressed by repeated attachments of his person or property, and subjected to various inconveniences, expenses, and damages, by a second, third, fourth, fifth, or fiftieth suit, brought by the same plaintiff, for one cause. Against such renewed attacks the defendant could not efficiently defend himself, if the plaintiff were allowed to withdraw from each attack at his pleasure, without the defendant's consent, for the purpose of making another to be given up in like manner. To be sure, the feigned attacks might give the defendant a right of action for abuse of process ; but the policy of the law is, to allow defendants to defend themselves against such vexation by plea in abatement.

" The law abhors multiplicity of actions, and, therefore, whenever it appears on record that the plaintiff has sued out two writs against the same defendant for the same thing, the second writ shall abate ; for, if it were allowed that a man should be twice arrested, or twice attached by his goods for the same thing, by the same reason he might suffer *in infinitum* ; and it is not necessary that both should be pending at the time of the defendant's pleading in abatement ; for if there was a writ in being at the time of suing out the second, it is plain the second was vexatious and ill, *ab initio*." Bac. Abr., Abatement (M). This is the ancient English rule. Even when there is no plea in abatement,

proceedings in one action may be stayed until another is disposed of. *Haigh* v. *Paris,* 16 M. & W. 144; *Bissill* v. *Williamson,* 7 H. & N. 391, 393. The present case is not affected by the rule of English practice, that, when a judgment of discontinuance is entered, it relates back to the day when the original rule to discontinue was taken out *(Brandt* v. *Peacock,* 1 B. & C. 649; 1 Ch. Pl. 454; *Green* v. *Watts,* 1 Ld. Raym. 274; *Knight's Case,* 2 Ld. Raym. 1014);—and such English cases, relating to bail, as *Belifante* v. *Levy,* 2 Stra. 1209, *Olmius* v. *Delany,* 2 Stra. 1216, and *Belchier* v. *Gansell,* 4 Burr. 2502, have no bearing upon a plea in abatement. The English authorities—treatises, decisions, and forms of pleading—are uniform on the point that, upon a plea of a former action pending, vexatiousness is a conclusion of law drawn from the fact of two suits brought by one person against another, for one cause, and pending at one time, and is not a matter of fact depending upon the question whether the first action was defective, or whether the plaintiff was justified in seeking better security in the second, or whether, upon some other special ground, it is equitable that the second should be commenced while the first is pending.

In some jurisdictions in this country a new rule has been introduced. *Durand* v. *Carrington,* 1 Root 355; *Q. Bank* v. *Tarbox,* 20 Conn. 510; *Hixon* v. *Schooley,* 2 Dutcher 461; *Frogg* v. *Long,* 3 Dana 157; *Adams* v. *Gardiner,* 13 B. Monroe 197; *Rogers* v. *Hoskins,* 15 Ga. 270; *Langham* v. *Thomason,* 5 Texas 127; *State* v. *Dougherty,* 45 Mo. 294; *Reynolds* v. *Harris,* 9 Cal. 338; *Ballou* v. *Ballou,* 26 Vt. 673; *Kirby* v. *Jackson,* 42 Vt. 552; *Averill* v. *Patterson,* 10 N. Y. 500; *Jewett* v. *Locke,* 6 Gray 233. "That the pendency of a prior suit between the same parties, and for the same cause of action, is ground of abatement of the second suit, is a doctrine of the common law. And this doctrine is founded upon the supposition that the second suit is unnecessary, oppressive, and vexatious. Such are the reasons assigned in the books for the adoption of the rule. It is based upon the supposition that the first suit was effective and available, and afforded an ample remedy to the party, and hence the second suit would be unnecessary, and consequently vexatious. This being the reason for the adoption of the rule, there would seem to be no propriety in extending and applying it to cases where the reason does not exist. It would be much more consonant to reason, to apply the maxim, that when the *reason* for the rule ceases, the rule itself should cease. Hence it is that courts, in modern times, have somewhat modified the rule, and, instead of regarding the second suit as *necessarily* vexatious, have gone into the inquiry of whether, *in fact,* it was vexatious. It is upon this principle that the courts in Connecticut have uniformly proceeded, in holding that the second suit is not vexatious, when it appears that the prior suit must have been *ineffectual,* and consequently that it is no ground for abating the second suit. This doctrine is laid down in the case from Root's reports, cited by Judge GOULD in his treatise upon pleading, and is recognized by the superior court in 18 Conn. 290, as settled law in that State. And we think the rule thus estab-

lished in Connecticut is founded in reason, and sustained by authority. In New York, the rule seems to have been somewhat different. In that State it has been held, and professedly upon English authority, that when the defendant pleads in abatement the pendency of another action, the plaintiff may enter a discontinuance in the first suit before a replication is filed to the plea in abatement, and that without leave of the court, and thereby sustain a replication of *nul tiel record*.  *Marston* v. *Lawrence*, 1 Johns. Cas. 397.   This was held to be matter of right; and the court cited, as sustaining the position, Barnes's Notes 257, 1 Leon. 105, and 1 Sellon's Practice 304.   So it was held by this court, in *Hill* v. *Dunlap*, 15 Vt. 645, that, if one commence a suit by process which is defective, he may discontinue it and bring fresh suit, and the second suit will not be considered vexatious, and that the former suit may be discontinued by oral notice."   *Downer* v. *Garland*, 21 Vt. 362, 365, 366.

In these views we are unable to concur.   A sufficiently liberal practice in amendments, such as is now nearly established in this State by legislative and judicial restoration of the true principles of the common law, will go far to obviate any need of a new practice of curing a defective suit by a second suit, brought for the same cause, by the same plaintiff against the same defendant, while the first suit is pending.   If it should be found expedient to allow a plaintiff to obtain security by attachment, under suitable restrictions, in a single suit, at any time before judgment, the legislature will doubtless provide a process for that purpose.   It is better that a plaintiff should be protected by amendments and attachments allowed during the pendency of one suit, than that both parties should be exposed to controversy and litigation on the collateral question, far removed from the merits of the case, whether a second suit, for the same cause, is in fact vexatious.   To allow the collateral question of actual vexatiousness to be agitated, would be to open a door which was shut by all the ancient authorities, and which we think ought to remain shut.   The reason of the ancient rule required the second suit to be abated, not because, upon inquiry into all the circumstances, it was found to be in fact vexatious and oppressive, but because it evidently was vexatious and oppressive, unless shown not to be so upon the trial of the broad issue of vexation and oppression as a general question of fact, the trial of which would generally be more inexpedient than the abatement of the second suit without such a trial.   A series of suits, pending at one time for one cause, ineffectual so far as giving the plaintiff judgment is concerned, may be an effectual persecution of the defendant; and permitting the defendant to be harassed by such suits and the maintenance of the last one, would encourage and cultivate a want of due care in making the first one effectual.   The ancient doctrine was based on broad grounds of practical wisdom, expediency, and justice.   Whether it be called a policy, an arbitrary rule, an equitable reason, or a legal principle, it has produced a salutary system of practice, which is firmly established in this State, and which there is no sufficient cause to disturb.

*Writ abated.*